UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

Kimberly-Clark Worldwide, Inc., and
Kimberly-Clark Global Sales, LLC,

     Plaintiffs,        Case No. 14-C-1466

v.              Judge William C. Griesbach

First Quality Baby Products, LLC and
First Quality Retail Services, LLC, and
First Quality Consumer Products, LLC.

     Defendants.

---

First Quality Baby Products, LLC and
First Quality Consumer Products, LLC,

     Counterclaim-Plaintiff,

           **JURY TRIAL DEMANDED**

v.

Kimberly-Clark Corporation,
Kimberly-Clark Worldwide, Inc., and
Kimberly-Clark Global Sales, LLC,

     Counterclaim-Defendants.

---

**MEMORANDUM IN SUPPORT OF FIRST QUALITY'S MOTION FOR
SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF
U.S. PATENT NO. 8,747,379 ARE INVALID**

---

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTS SUPPORTING SUMMARY JUDGMENT OF INVALDITY ............................ 2

        A. ........Summary of the '379 Patent ....................................................................... 2

        B. ........The Prior Art ............................................................................................... 4

                1. .........K-C's Non-Refastenable Pull-Ups ................................................. 4

                2. .........LaFleur Solved The Problem Identified By the '379 Patent....................... 5

                3. .........The 1996 Pull-Ups ....................................................................... 7

        C. ........Prosecution History ..................................................................................... 10

        D. ........Procedural History ...................................................................................... 11

III.    CONTROLLING LEGAL STANDARDS ..................................................................... 12

        A. ........Summary Judgment ...................................................................................... 12

        B. ........Collateral Estoppel ...................................................................................... 13

        C. ........Obviousness ................................................................................................ 13

IV.     THE ASERTED CLAIMS ARE INVALID AS OBVIOUS ........................................... 14

        A. ........The Level of Skill of The Person of Ordinary Skill In the Art ........................... 14

        B. ........The 1996 Pull-Ups and LaFleur Teach Every Element of Claim 1 ..................... 14

        C. ........Dependent Claims 2-8, 10-16, 18, 23, 24 Are Obvious ..................................... 16

                1. .........Containment Flaps and Surge Layers Were Old ...................................... 16

                2. .........Printed Graphics and Wetness Indicators Are Not Patentable ................... 20

                3. .........The Court Has Already Determined That "Prefastened" Training
                        Pants Were Old ........................................................................... 21

                4. .........The Positioning, Size and Composition of the Fastening Elements
                        and Side Panel Are Obvious Design Choices Taught By The Prior
                        Art ............................................................................................. 23

        D. ........Claims 25 and 27-29 Merely Lump Together The Old Elements Discussed
                Above ........................................................................................................ 25

        E. .........Secondary Considerations Cannot Overcome the Strong *Prima Facie* Case
                of Obviousness and K-C is Barred from Re-Litigating these Issues ................... 27

V.      K-C IS BARRED FROM RELITIGATING THE SAME ISSUES OF
        OBVIOUSNESS ........................................................................................................ 29

VI.     CONCLUSION ........................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
 776 F.2d 281 (Fed. Cir. 1985).....................................................................................28

*Bourns, Inc. v. United States*,
 537 F.2d 486 (Ct. Cl. 1976) .............................................................................1, 29, 30

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)......................................................................................................12

*Collegenet, Inc. v. Applyyourself, Inc.*,
 Nos. CV-02-484-HU, CV-02-1359-HU, 2008 U.S. Dist. LEXIS 90156 (D. Or.
 Oct. 28, 2008) ...............................................................................................................30

*Gardner v. TEC Systems, Inc.*,
 725 F.2d 1338 (Fed. Cir. 1984).....................................................................................25

*Graham v. John Deere Co.*,
 383 U.S. 1 (1966)..........................................................................................................13

*Kimberly-Clark, Inc. v. First Quality Baby Prods., LLC*,
 900 F. Supp. 2d 919 (E.D. Wis. 2012)..........................................................................20

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
 579 Fed. App'x 996, No. 2013-1493, 2013-1494 (Fed. Cir. October 10, 2014) ..............11, 29

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
 900 F. Supp. 2d 903 (E.D. Wis. 2012)............................................................... *passim*

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
 No. 09-C-916, 2012 U.S. Dist. LEXIS 129646 (E.D. Wis. Sept. 12, 2012)...........................25

*Klingman v. Levinson*,
 831 F.2d 1292 (7th Cir. 1987) ......................................................................................13

*KSR Int'l Co. v. Teleflex Inc.*,
 550 U.S. 398 (2007)........................................................................................ *passim*

*In re Larson*,
 340 F.2d 965 (C.C.P.A. 1965) ......................................................................................24

*Ohio Willow Wood Co. v. Alps S., LLC*,
 735 F.3d 1333 (Fed. Cir. 2013)............................................................................13, 29

595730.1

ii

*Ormco Corp. v. Align Tech., Inc.*,
　463 F.3d 1299 (Fed. Cir. 2006)..................................................................................28

*Rothman v. Target Corp.*,
　556 F.3d 1310 (Fed. Cir. 2009)..................................................................................28

*STX, LLP v. Brine, Inc.*,
　211 F.3d 588 (Fed. Cir. 2000)....................................................................................12

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
　626 F.3d 1361 (Fed. Cir. 2010)..................................................................................16

*Westwood Chem., Inc. v. United States*,
　525 F.2d 1367 (Ct. Cl. 1975)......................................................................................30

*In re Woodruff*,
　919 F.2d 1575 (Fed. Cir. 1990)..................................................................................24

**Statutes**

35 U.S.C. §102(b) ....................................................................................................5, 7

35 U.S.C. §103 ...........................................................................................................13

**Rules**

Fed. R. Civ. P. 56 ..........................................................................................................1

Case 1:14-cv-01466-WCG   Filed 01/23/15   Page 4 of 35   Document 91

The First Quality Defendants-Counterclaimants respectfully move for summary judgment pursuant to Fed. R. Civ. P. 56 that Claims 1-8, 10-16, 18, 23-25, and 27-29 ("the Asserted Claims") of U.S. Patent No. 8,747,379 ("the '379 Patent") are invalid.

## I.  INTRODUCTION

In prior litigation with First Quality in this Court, K-C tried to assert that the obvious combination of an old training pant and a known refastenable side seam is somehow a patentable invention.  It is not, as this Court correctly ruled and as the Federal Circuit affirmed.  In this litigation, K-C now tries to argue that this combination—an old training pant with a known refastenable seam—can be transformed from obvious to patentable simply by tacking on other common features already found in prior art training pants.  K-C is wrong as a matter of law and, for the following reasons, summary judgment should rightly follow.

*First*, K-C is collaterally estopped from arguing that the Asserted Claims of the '379 Patent are non-obvious.  There is no patentable difference between the '379 Patent asserted here and its grandparent, U.S. Patent No. 6,849,067 ("the '067 Patent"), which this Court invalidated as obvious. Both patents' claims are directed to training pants with refastenable side seams; indeed, the patents share the same inventors, the same specification, and the same drawings.

K-C represented to this Court that "the claims of the two patents are significantly different as the '379 patent claims contain additional substantive limitations," including "containment flaps" and a "surge layer," and that the pant is "prefastened." (ECF 71 at 10) (emphasis added). K-C knows these assertions are not true. K-C's own prior art included containment flaps and surge layers; and this Court already held that "prefastened" training pants were old. Under the law, these minor differences between the claims are immaterial because these they "relate only to things known in the art," and K-C remains estopped from re-litigating invalidity based on obviousness. *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976).

*Second*, even if K-C could litigate the issue of obviousness for certain asserted claims, those claims are still invalid because they merely combine (i) the already obvious combination of an old training pant and a known refastenable seam, with (ii) other features—*e.g.*, printed graphics, a surge layer, containment flaps, and non-stretch side panels—that were already used in prior art training pants. The '379 Patent does not even suggest that these common features are somehow novel. This overwhelming *prima facie* case of obviousness cannot be overcome by any contrary objective evidence K-C might offer, all of which relates to the refastenable seam feature that K-C is estopped from arguing was non-obvious.

K-C has already failed once to convince this Court that the obvious combination of a refastenable seam with a prior art training pant was patentable. The Federal Circuit summarily agreed. K-C cannot fare any better by asserting another patent that simply adds more prior art elements to that same obvious combination. Accordingly, First Quality is entitled to summary judgment that the Asserted Claims of the '379 Patent are invalid.

## II. FACTS SUPPORTING SUMMARY JUDGMENT OF INVALDITY

### A. <u>Summary of the '379 Patent</u>

The '379 Patent is a continuation of the '067 Patent, a patent K-C asserted against First Quality in a prior litigation, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 1:09-cv-00916-WCG (E.D. Wis.) ("the Prior Litigation"). (Statement of Proposed Material Facts ("SOF") ¶¶1-2). These two patents share the same inventors, the same specification, the same drawings and have claims directed to training pants with the same refastenable seams. (SOF ¶3). The only difference between the claims in these two patents is the addition in the Asserted Claims of common features already found in prior art training pants.

The '379 Patent discloses and claims a child's training pant with refastenable seams.

(SOF ¶4).  The '379 Patent recognizes that training pants known in the prior art had bonded seams between elastic side panels.  (SOF ¶5).  Like the '067 Patent, the '379 Patent states that it was desirable to have a pant that can "be removed quickly and easily . . . [especially] when the pant contains messy excrement."  (SOF ¶6; Blevins Decl., Ex. 2, '379 Patent, Col. 5:41-45).

To address this "problem," the '379 Patent provides the same "solution" as the '067 Patent, namely, the use of refastenable seams.  (SOF ¶7; *Id.*, Col. 1:65-67 and FIG. 1).  As shown in annotated Figure 1 below, the '379 Patent discloses the use of hook and loop fasteners 82-85 to form refastenable seams 88 on the side panels 34, 134, instead of the bonded seams of a prior art training pant.  (SOF ¶8; '379 Patent, Col. 2:37-39, 58-62 and Cols. 16:63-17:27).



FIG. 1

This Court has already found, however, that this problem had already been solved by the prior art.  In the Prior Litigation, this Court concluded that the asserted claims of the '067 Patent were invalid as an obvious combination of an old K-C Pull-Ups training pant ("the 1989 Pull-Ups") and the refastenable side seam described in U.S. Patent No. 4,610,680 ("LaFleur").

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 900 F. Supp. 2d 903, 914–15 (E.D. Wis. 2012).

## B.    **The Prior Art**

### 1.    **K-C's Non-Refastenable Pull-Ups**

K-C introduced its non-refastenable Pull-Ups to the market in 1989.  *Kimberly-Clark Worldwide*, 900 F. Supp. 2d at 905.  An early version of the Pull-Ups is shown in the photograph below (left).  (Blevins Decl. ¶36).  As this Court previously found, this pant is described is U.S. Patent No. 4,940,464 ("Van Gompel," below right) and includes "an absorbable assembly comprised of a liquid-impervious outer cover, a liquid-pervious liner, and an absorbent medium in between.  Extending out from the ends of this assembly were front and back stretchable or elastomeric side-panels that were permanently bonded together to form a waist opening and a pair of leg openings. An elastic or other gathering means around the waist and leg openings, along with the elastic side-panels insured that the training pants fit snugly around the waist and crotch area." *Kimberly-Clark Worldwide,* 900 F. Supp. 2d at 906.



As this Court also previously found, a well-known problem posed by K-C's non-

595730.1

4

refastenable Pull-Ups was that the "bonded seams prevented easy removal of the article except over the child's legs, increasing the risk of spreading soilage." *Id.* at 912.

### 2. LaFleur Solved The Problem Identified By the '379 Patent

The Court is already familiar with LaFleur, which was also used to invalidate the claims of the '067 Patent in the Prior Litigation. LaFleur issued on September 9, 1986, more than 13 years before K-C filed the '379 Patent, and thus, is prior art under 35 U.S.C. §102(b). *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 907.

Like the '379 Patent, and as this Court previously found, LaFleur describes the soilage problems associated with K-C's non-refastenable training pants. *Id.* at 907, 912. Specifically, LaFleur explains that removing a permanently-sealed training pant from a child requires manipulating the child's body through the waist and leg openings of the pant; and that this is especially disadvantageous because "once a garment has become soiled, removal of the garment can substantially increase the spread of soilage . . . since the garment must be pulled over the child's legs." *Id.* at 907 (quoting LaFleur, Col. 1:30-37).

To solve this problem, LaFleur teaches the use of refastenable seams in place of bonded seams. Such a training pant can be "easily removed from the child" and is "resealable so that the [training pant] can be worn again." (SOF ¶32; Blevins Decl., Ex. 14, LaFleur, Col. 1:6-11 and Col. 2:7-17). As shown in Figure 5 below (annotated), the refastenable "disposable training panty" 60 of LaFleur includes a "set of overlapping flaps," i.e., side panels, that extend "from the waist band 14 to the leg band 24." (SOF ¶33; Blevins Decl., Ex. 14, LaFleur, Col. 4:20-26). LaFleur teaches that "[t]he overlapping flap portions are sealed together by mating, hook and pile, fastening strips 52 and 54," such as "velcro fastening strips." (SOF ¶34; Blevins Decl., Ex. 14, LaFleur, Col. 4:26-29 and Col. 3:58-63). The resulting refastenable seams are positioned at

Case 1:14-cv-01466-WCG   Filed 01/23/15   Page 9 of 35   Document 91

the sides of the wearer over the hips. (SOF ¶35; Blevins Decl., Ex. 14, LaFleur, Col. 4:29-33 ("[T]he entire front flap portion 61 . . . can be detached from the rear flap portion 63 . . . at each side in order to remove the garment when desired.")).



As shown in Figure 5 above and as set forth in Claims 14 and 15 of LaFleur, the hook and pile Velcro fasteners extend the entire (i.e., 100%) distance from the waist opening to each leg opening. (SOF ¶36; Blevins Decl., Ex. 14, LaFleur, Col. 4:29-33; *see also id.* at Col. 6:39-44 and Claims 14-16). Indeed, this Court already found that "[n]o reasonable jury could find that LaFleur does not teach a refastenable seam extending substantially the length from the waist opening to each respective leg opening." *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 911. This refastenable seam enables "the entire front flap portion 61 of the garment member 60 [to] . . . be detached from the rear flap portion 63 of the garment member 60 at each side in order to remove the garment when desired." (SOF ¶36; Blevins Decl., Ex. 14, LaFleur, Col. 4:29-33).

After examining LaFleur alongside the 1989 Pull-Ups training pant, this Court reasoned that "a person of ordinary skill in the art could implement a predictable substitution of the

595730.1

6

bonded seam taught in the original Pull–Ups® pants with the refastenable seam taught in LaFleur." *Kimberly-Clark Worldwide*, 900 F. Supp. 2d at 914.  As a result, this Court held, "[t]he combination of elements of the original Pull‑Ups® training pants and LaFleur make the '067 Patent obvious[.]" *Id.*

### 3. The 1996 Pull-Ups

In addition to the features claimed by the '067 Patent, some Asserted Claims of the '379 Patent also include common features already found in prior art training pants, including, for example (i) printed graphics that simulate leg bands and waistbands, as well as printed wetness indicators, (ii) a pair of elasticized containment flaps running the length of the pant that form a pocket to contain waste within the pant, and (iii) a surge layer that temporarily stores urine until it is absorbed by the core. (SOF ¶10; Blevins Decl., Ex. 2, '379 Patent, Col. 11:24-52, Cols. 9:56-10:9 and Col. 13:23-35).

Many of these common features are embodied in a non-refastenable Pull-Ups training pant sold by K-C in 1996 ("the 1996 Pull-Ups"), shown below.  As set forth in the Hanson Declaration, the 1996 Pull-Ups was purchased in the United States in 1996, more than one year before the earliest filing date of the '379 Patent.  (SOF ¶21; Hanson Decl. ¶4).  The 1996 Pull-Ups is therefore prior art under 35 U.S.C. §102(b).



The 1996 Pull-Ups had all of the features of K-C's earlier Pull-Ups, but also included a number of additional features. (SOF ¶¶24-29; Blevins Decl. ¶¶40-47). For example, the outer portion of the pant included revised printed graphics, including simulated (e.g., printed) elastic waistbands and leg bands, and a registered graphic (e.g., scene with animals driving cars that always appears on the pant in the same place). (SOF ¶25; Blevins Decl. ¶44).



In addition, the 1996 Pull-Ups included a pair of elasticized "containment flaps" extending the length of the pant, as shown in the annotated photograph below. (SOF ¶26; Blevins Decl. ¶45). These flaps form pockets that help contain waste within the pant.



595730.1

Despite the addition of these common features, soilage was still a problem faced by conventional training pants, such as the 1996 Pull-Ups. (SOF ¶31). In this motion, First Quality relies on the 1996 Pull-Ups for its obviousness analysis since it includes all of the relevant features of the 1989 version used to invalidate the '067 Claims in the Prior Litigation, as well as many of the common training pant features added to the Asserted Claims of the '379 Patent.

### C. <u>Prosecution History</u>

The '379 Patent was filed on January 22, 2010 as U.S. Patent Application No. 12/692,103 ("the '103 Application"), claims a priority date of December 18, 1998, and issued on June 10, 2014. (SOF ¶1; Blevins Decl., Ex. 2, '379 Patent, Cover).

Even though this Court's summary judgment decision was issued while prosecution of the '379 Patent was ongoing, the Examiner did not rely upon any of the prior art or invalidity findings from the decision. This may be a result of the fact that K-C provided the decision to the Patent Examiner along with over one hundred other documents, and without any commentary. (SOF ¶14; Blevins Decl., Ex. 4, '103 App., Nov. 6, 2012 IDS).

In an Office Action dated June 12, 2013, the Examiner rejected all claims of the '103 Application as obvious. (SOF ¶16; Blevins Decl., Ex. 5, June 12, 2013 Office Action at 3-7). However, the Examiner did not discuss, mention, or apply the prior art relied upon by the Court, or even reference the Court's summary judgment decision. Instead, the Examiner rejected the pending claims as obvious over other, less pertinent prior art. (Blevins Decl. ¶26). In response to the Examiner's rejection, K-C argued (ignoring this Court's findings) that the Examiner failed to show how this prior art disclosed, *inter alia,* refastenable seams. (SOF ¶16; Blevins Decl., Ex. 6, Sept. 10, 2013 Office Action at 2-11). Thereafter, and without even mentioning this Court's decision, LaFleur, or K-C's prior art bonded seam training pant, the Examiner allowed the claims

595730.1

of the '103 Application.  (SOF ¶17; Blevins Decl., Ex. 7, Jan. 28, 2014 Notice of Allowance).

The invalidity of the '379 Patent is currently at issue in proceedings before the Patent Office.  Before this action was filed, First Quality filed petitions for inter partes review ("IPR") of all of the claims of the '379 Patent.  (SOF ¶18).  On December 15, 2014, the Patent Office granted these petitions and instituted inter partes review, finding that that there is a "reasonable likelihood" that that all claims of the '379 Patent are unpatentable as obvious.  (SOF ¶19; Blevins Decl., Ex. 10, IPR2014-01021, Dec. 15, 2014 Order, Paper No. 9 at 10 and *id.*, Ex. 11, IPR2014-01024, Dec. 15, 2014 Order, Paper No. 9 at 10).  The Patent Office must issue its final decision prior to December 15, 2015.

### D. <u>Procedural History</u>

As stated above, K-C unsuccessfully asserted the '067 Patent against First Quality in a prior litigation before this Court.  In 2012, after years of discovery and extensive briefing, this Court granted First Quality's motion for summary judgment, finding the asserted claims of the '067 Patent invalid as an obvious combination of the 1989 Pull-Ups and LaFleur.  *Kimberly-Clark Worldwide*, 900 F. Supp. 2d at 914–14.

K-C appealed to the Federal Circuit.  Notably, K-C did not challenge ***any*** of the Court's factual filings with respect to the scope and content of the prior art, motivation to combine, or level of skill in the art.  Instead, K-C argued that this Court reached its conclusion of obviousness of the '067 Patent "before considering fully, or at all, the objective indicia of nonobviousness." (Blevins Decl., Ex. 26, K-C's Opening Appeal Br. at 55).  Four days after oral argument, the Federal Circuit issued a unanimous *per curiam* order affirming this Court's judgment of invalidity of the asserted claims of the '067 Patent.  *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 579 Fed. App'x 996, No. 2013-1493, 2013-1494 (Fed. Cir. October

10, 2014).

While K-C's appeal of the '067 Patent was pending, K-C initiated this action in the United States District Court for the Western District of Wisconsin. On November 20, 2014, Judge Conley transferred this case to this Court, given this Court's "familiarity with the parties, the technology, a related patent, and the prior art ...." (ECF 50 at 1). Judge Conley also noted that the "claims of the '379 Patent use identical language to that used in the '067 Patent to describe the components of the refastenable training pant." (*Id.* at 11).

After the *per curiam* affirmance by the Federal Circuit and before transfer to this Court, First Quality (i) notified K-C that the Federal Circuit's decision "leaves no doubt that the '379 Patent is also invalid," (ii) explained that K-C is collaterally estopped from re-litigating the same issues that establish the invalidity of the Asserted Claims of the '379 Patent, and (iii) requested that K-C agree to a dismissal of this case. (ECF 58-2, Oct. 23, 2014 Ltr. to M. Cooperman). K-C did not respond.

## III.    CONTROLLING LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is designed to isolate and dispose of factually unsupported claims in an action, including in patent cases. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986); *STX, LLP v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000). Under Rule 56(a), a court shall render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Id.* at 322-23; *see also* Fed. R. Civ. P. 56(e).

Case 1:14-cv-01466-WCG    Filed 01/23/15    Page 16 of 35    Document 91

## B.     Collateral Estoppel

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co.*, 735 F.3d at 1342; *see also Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

Collateral estoppel also applies to common issues of fact or law involving different but related patents.  *See, e.g., Ohio Willow Wood Co.*, 735 F.3d at 1342-43.   "[Federal Circuit] precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply …. If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.* at 1342 (emphasis in original).

## C.     Obviousness

A claim is not patentable "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. §103. An assessment of patent invalidity under §103 involves the following factors: (1) determining the scope and content of the prior art; (2) identifying the differences between the prior art and the claims at issue; (3) determining the level of ordinary skill in the art; and (4) reviewing the objective indicia of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1 (1966). "The ultimate judgment of obviousness is a legal determination."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) (citations omitted). Summary judgment is appropriate "[w]here . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are

not in material dispute, and the obviousness of the claim is apparent in light of these factors . . . ." *Id*.

## IV. THE ASERTED CLAIMS ARE INVALID AS OBVIOUS

### A. The Level of Skill of The Person of Ordinary Skill In the Art

This Court previously found that a person of ordinary skill in the art with respect to the '067 Patent "is a person with two-to-four years of work experience in product design and testing of disposable absorbent articles such as diapers, training pants and incontinence briefs." *See Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. at 909. This definition should be applied here as well.

### B. The 1996 Pull-Ups and LaFleur Teach Every Element of Claim 1

Independent Claim 1 is directed to a conventional training pant with refastenable seams. The 1996 Pull-Ups has all of the elements of Claim 1, with the exception of refastenable seams. However, as this Court found, LaFleur discloses a training pant with refastenable seams. *See Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. at 907; (*See also* Blevins Decl., Ex. 15, Claim Charts at ___).

As discussed above, LaFleur recognized that when a soiled training pant with bonded seams was pulled off of the child, the soilage in the pant would spread to the child's legs. (SOF ¶31). LaFleur solved the soilage problem by replacing the bonded seams with refastenable seams formed by mating "hook and pile" (i.e., Velcro) fasteners 52, 54. (SOF ¶¶32-34; Blevins Decl. ¶50; Blevins Decl., Ex. 14, Col. 4:26-29 and Col. 3:58-63). Under Supreme Court precedent, any need or problem known in the field (i.e., soilage) at the time of invention can provide a reason for combining prior art. *KSR Int'l Co.*, 550 U.S. at 421. As such, it would have

Case 1:14-cv-01466-WCG   Filed 01/23/15   Page 18 of 35   Document 91

been obvious to a person of ordinary skill in the art to replace the bonded seams in the 1996 Pull-Ups with LaFleur's refastenable seam to solve the soilage problem. (Blevins Decl. ¶58).

Indeed, this Court previously reached the same conclusion with respect to LaFleur in combination with the 1989 Pull-Ups. Specifically, the District Court recognized that "[t]here are only a finite and limited number of predictable solutions to this [soilage] problem, one of which was the refastenable seam offered by LaFleur;" and "replacing the bonded seam of . . . training pants with the refastenable hook and loop seam . . . taught in LaFleur would have been obvious to a person with ordinary skill in the art to try." *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 912. The Court's reasoning, which was affirmed unanimously by the Federal Circuit, is equally applicable to the related '379 Patent.

In this case, and in the related IPR proceedings, K-C has asserted that Claim 1 is not obvious because "[p]roblems associated with positioning and retaining hook and loop fasteners on elastomeric front or back side panels (as opposed to non-elastomeric sides) ... are neither considered by LaFleur nor could one of ordinary skill in the art infer as much therefrom." (*See, e.g.*, Blevins Decl., Ex. 8, IPR2014-01021, K-C's Preliminary Response at 17; *see also* Blevins Decl., Ex. 27, K-C's Jan. 20, 2015 Response to Interrog. No. 9 at 4-5). But K-C already lost this argument. This Court expressly held that it would have been obvious to place the refastenable side seams of LaFleur on **the elastomeric side panels** of K-C's prior art Pull-Ups. *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 912. Moreover, the '379 Patent could not have possibly addressed this newly concocted "problem." With respect to the positioning of fastening components, the '379 Patent **only** states that "[t]he fastening components and the mating fastening components 82-85 can be adhered to the side panels 34 and 134 by **any means known to those skilled in the art** such as adhesive bonds, sonic bonds or thermal bonds." (Blevins Decl.,

595730.1

15

Ex. 2, '379 Patent, Col. 16:32-35 (emphasis added)). K-C's assertion here that replacing the permanently bonded seams of the prior art with refastenable seams "requires a level of skill that was well beyond that of the person of ordinary skill in the art" (Blevins Decl., Ex. 27 at 5), is meritless and contrary to the specification itself.

### C. Dependent Claims 2-8, 10-16, 18, 23, 24 Are Obvious

Dependent Claims 2-8, 10-16, 18, 23, and 24 are directed to common features of prior art training pants, and are also obvious. *See W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1372 (Fed. Cir. 2010) (concluding that the asserted claims, which "add[ed] only trivial improvements that would have been a matter of common sense to one of ordinary skill in the art," were obvious as a matter of law). First Quality addresses a number of these claim elements below, and also refers to the Blevins Declaration and related claim charts (Blevins Decl., Ex. 15), which further address the invalidity of these dependent claims.

#### 1. Containment Flaps and Surge Layers Were Old

Claims 11 and 14 recite two well-known training pant features, containment flaps and surge layers, respectively. Containment flaps are a pair of elasticized flaps running the length of the pant that form a pocket to contain waste within the article. The '379 Patent itself admits that containment flaps were old, ***dating back to 1987***. (Blevins Decl. Ex. 2, '379 Patent, Co. 10:4-8) ("[s]uitable constructions and arrangements for the containment flaps 46 are ***generally well known to those skilled in the art*** and are ***described in U.S. Pat. No. 4,704,116 issued Nov. 2 1987 to Enloe***, which is incorporated herein by reference") (emphasis added)). As shown below, the 1996 Pull-Ups included the same claimed containment flaps extending the length of the chassis. (SOF ¶26; Blevins Decl. ¶120).

595730.1



**The 1996 Pull-Ups**   **Fig. 3 of the '379 Patent**

Given that this Court has already found that one of ordinary skill in the art would have been motivated to combine a prior art training pant with bonded seams (like the 1996 Pull-Ups) with the refastenable seems of LaFleur, Claim 11 is obvious. (Blevins Decl. ¶121).

As to Claim 14, surge layers were likewise old. A surge layer is simply a layer of material placed between the topsheet and the absorbent core to provide temporary storage for liquid until the absorbent core can permanently absorb the fluid. (Blevins Decl. ¶141). The inventors of the '379 Patent cannot claim this feature as their own—the text describing surge layers in the '379 Patent is *identical* to the text in a prior art K-C publication, PCT Application Publication WO 97/31602 ("Kuen"). (SOF ¶¶101-2; *Compare* Blevins, Ex. 2, '379 Patent, Col. 13:27-35 *with id.* Ex. 20, Kuen, p. 10:20-25).

595730.1

17

As shown below, the Kuen training pant is similar to the Van Gompel training pant. However, the training pant of Kuen also includes a surge layer 58 "constructed and designed primarily to receive, temporarily store, and transport liquid along the mutually facing surface with absorbent pad 56, thereby maximizing the absorbent capacity of absorbent structure 32." (SOF ¶101; Blevins Decl., Ex. 20, Kuen, Col. 10:18-20 and Fig. 3).



| Fig. 1 of Kuen | Fig. 2 of Van Gompel |

Further, as shown below, the surge layer of Kuen is identical to the surge layer of the '379 Patent (common language underlined):

| Surge Layer of Kuen | Surge Layer of '379 Patent |
|---|---|
| One suitable construction and design of a surge layer 58 is <u>a material having a basis weight of about 50 grams per square meter, and comprising a through-air-bonded-carded web of a homogenous blend of 60 percent 3 denier bicomponent fiber comprising a polyester core/polyethylene sheath, commercially</u> | One suitable material is referred to as a surge layer (not shown) and comprises <u>a material having a basis weight of about 50 grams per square meter, and comprising a through-air-bonded-carded web of a homogenous blend of 60 percent 3 denier bicomponent fiber comprising a polyester core/polyethylene</u> |

Case 1:14-cv-01466-WCG   Filed 01/23/15   Page 22 of 35   Document 91

| | |
|---|---|
| available from BASF Corporation, and 40 percent 6 denier polyester fiber, commercially available from Hoechst Celanese.<br><br>(Blevins Decl. Ex. 20, Kuen, p. 10:20-25 | sheath, commercially available from BASF Corporation, and 40 percent 6 denier polyester fiber, commercially available from Hoechst Celanese ...<br><br>(Blevins Decl. Ex. 2, '379 Patent, Col. 13:27-35) |

Like the 1996 Pull-Ups, Kuen is directed to a pant for use in toilet training children. (SOF ¶100; Blevins Decl. ¶143). In designing a training pant, as with the design of all absorbent articles (e.g., diapers, adult incontinence), a goal is to maximize absorbency and minimize leakage (i.e., soilage). (SOF ¶103; Blevins Decl. ¶143). It was well known at the time of the alleged invention that surge layers, such as that disclosed by Kuen, were useful in obtaining these goals. (*Id.*). Therefore, one of ordinary skill the art would have been motivated to incorporate the surge layer of Kuen into the refastenable training pant formed by the combination of the 1996 Pull-Ups and LaFleur in order to improve upon the problem of spreading soilage on the child. (SOF ¶104; Blevins Decl. ¶143). Accordingly, Claim 14 is obvious over the 1996 Pull-Ups and LaFleur in view of Kuen. *KSR Int'l Co.*, 550 U.S. at 419-20 (a patent is obvious if "there existed at the time of the invention a known problem for which there was an obvious solution encompassed by the patent's claims").

In the related IPR proceedings, K-C recently represented to the Patent Office that "[i]t ... would not have been obvious to one of ordinary skill in the art to ... incorporate a surge layer and containment flaps in a training pant." (Blevins Decl., Ex. 9, Ex. 9, IPR2014-01024, K-C's Oct. 7, 2014 Response at 12; *see also id.* at 25 (asserting that "conventional training pants ... did NOT include a surge layer or containment flaps ...") (emphasis in original)). K-C's representations were untrue—its own prior art explicitly taught the use of a surge layer ***in a training pant***. It even sold millions of ***training pants with containment flaps*** long before the '379 Patent was ever filed.

## 2.    Printed Graphics and Wetness Indicators Are Not Patentable

Asserted Claim 13 is directed to a training pant with various printed "graphics," including "simulated leg band components," "simulated elastic waistband components" and "registered wetness indicators."   As a result of the Prior Litigation, K-C must know that these features—which the specification identifies as "appearance related components"—are not patentable. Under the printed matter doctrine, printed graphics (e.g., simulated leg bands and waistbands) are not statutory patentable material.   *See Kimberly-Clark, Inc. v. First Quality Baby Prods., LLC*, 900 F. Supp. 2d 919, 925 (E.D. Wis. 2012).   This Court found (and the Federal Circuit agreed) that the ***specific arrangement of graphics and wetness indicators*** claimed by K-C was not patentable.   *Id.*   K-C's attempt to claim similar graphics here must necessarily fail as well.

In addition, the 1996 Pull-Ups had the same claimed simulated graphics, with the exception of the wetness indicator.   (SOF ¶25; Blevins Decl. ¶132).   However, registered wetness indicators were taught in a prior art K-C publication, PCT Publication WO 97/24094 ("Brandon").   (SOF ¶91-94; Blevins Decl. ¶133).   In fact, the text describing the registered wetness indicator in the '379 Patent is ***identical***, word-for-word, to Brandon. (*Compare* Blevins Decl., Ex. 2, '379 Patent, Col. 11:26-37 *with id.*, Ex. 19, Brandon, p. 4:25-33).   Further, the simulated graphics of the '379 Patent (left) are identical to the graphics of Brandon (right). (*Compare* Blevins Decl., Ex. 2, '379 Patent, Fig. 2 *with id.*, Ex. 19, Brandon, Fig. 2A).

 

Fig. 2 of the '379 Patent                    Fig. 2A of Brandon

Brandon teaches a conventional training pant similar to the 1996 Pull-Ups. (SOF ¶96). It would have been obvious to include the "registered wetness indicator" of Brandon in the 1996 Pull-Ups in order to improve that pant. (SOF ¶98; Blevins Decl. ¶¶136-137). "If a technique [registered wetness indicators] has been used to improve one device [Brandon's training pant], and a person of ordinary skill in the art would recognize that it would improve similar devices [the 1996 Pull-Ups] in the same way, using the technique is obvious." *KSR Int'l Co.*, 550 U.S. at 417. Thus, K-C's "graphics" claims are also invalid as obvious in view of the 1996 Pull-Ups, LaFleur and Brandon.

### 3. The Court Has Already Determined That "Prefastened" Training Pants Were Old

Claim 16 recites a "prefastened" training pant. During the Prior Litigation, this Court construed a "prefastened" pant as a pant having "side panels . . . which are fastened or connected during manufacture and prior to sale." (Blevins Decl., Ex. 21, Jan. 19, 2011 Claim Construction

595730.1

21

Order at 15). The Court even provided an example of a "prefastened" training pant: K-C's original Pull-Ups. (*Id.* (explaining that "*[t]he permanently bonded training pants that K-C's 'easy open pull-ups' were intended to improve on are also pre-fastened*, that is, fastened before they are sold.") (emphasis added)). The 1996 Pull-Ups is no different, it is prefastened. (SOF ¶107; Blevins Decl. ¶151).

Given that the Court already found that "prefastened" pants were in the prior art, that should be the end of this matter. However, K-C intends to relitigate this issue. Specifically, K-C proposes that the Court construe this term to mean that "*the fastening components and mating fastening components* of the side panels of the training pant are fastened or otherwise connected during manufacture and prior to sale such that the user is provided with a pant-like product." As can be seen, K-C wants to import refastenability into this limitation (i.e., fastening components and mating fastening components). But this is the same construction previously rejected by the Court because "[t]he word 'prefastened' does not connote that the article to which it refers must also be refastenable." (Blevins Decl., Ex. 21, Jan. 19, 2011 Claim Construction Order at 15).

In any event, the prior art is replete with "prefastened" *and* "refastenable" training pants, many of which were scrutinized during the Prior Litigation. Prior art U.S. Patent Nos. 6,210,388 ("Widlund") and 5,779,831 ("Schmitz") taught, in considerable detail, processes for manufacturing prefastened and refastenable training pants. (Blevins Decl. ¶¶155-162). In fact, this Court acknowledged that Schmitz disclosed a "prefastened" refastenable pant, as construed by K-C. (*See, e.g.*, Blevins Decl., Ex. 24, Nov. 27, 2012 Decision and Order at 2) (finding that Schmitz "discloses a process for positioning the sides of a refastenable garment so that the fastening components are facing each other after the pant is folded and can be fastened together at a high rate of speed.").

595730.1

22

Given the express teachings of Widlund and Schmitz to manufacture prefastened and refastenable training pants, it would have been obvious—under any claim construction—to prefasten the refastenable training pant resulting from the combination of the 1996 Pull-Ups and LaFleur. *KSR Int'l Co.*, 550 U.S. 419-20.

### 4. The Positioning, Size and Composition of the Fastening Elements and Side Panel Are Obvious Design Choices Taught By The Prior Art

Dependent Claims 3-5, 7, 8, 18, 23 and 24 are textbook examples of obvious design choices.[1]  As the Supreme Court explained in *KSR*:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*KSR Int'l Co.*, 550 U.S. at 421.

Claim 3 requires that loop type fasteners be placed on the rear side panels (and face away from the wearer), while the hook type fasteners are placed on the front side panels (and face toward the wearer).  In this regard, a training pant designer would have been presented with limited options: (1) hooks can be placed on the inner or outer surface of the front side panels, and mating loops can be placed on the inner or outer surface of the rear side panels, or (2) loops can be placed on the inner or outer surface of the front side panels, and the mating hooks can be placed on the inner or outer surface of the rear side panels.  (SOF ¶49; Blevins Decl. ¶70).  Since there "are a finite number of identified, predictable solutions" the claimed combination would have been obvious to a person of ordinary skill in the art to try.  *KSR Int'l Co.*, 550 U.S. at 421.

---

[1] As also shown in the attached Declaration of John Blevins and related claim charts, each of these elements were expressly disclosed in K-C's own prior art.

595730.1

23

Similarly, Claims 5 and 7 require that the fasteners on the back side panels comprise "integral portions of the back side panels." As a general rule, the use of a one piece integral component instead of a multi-piece component disclosed in the prior art is "merely a matter of obvious engineering choice." *In re Larson*, 340 F.2d 965, 968 (C.C.P.A. 1965). This principle holds true here. K-C's prior art 1996 Pull-Ups already included side panels with a non-woven material on the outer surface. (SOF ¶24; Blevins Decl. ¶88). One of ordinary skill in the art would have known that such material can function as the "loops" in a mechanical fastening system, and could have easily selected a non-woven material that provided the desired performance. (SOF ¶65; Blevins Decl. ¶88). Thus, as a matter of law, the recitation of integral loop fasteners in Claims 5 and 7 are obvious and unpatentable.

Other Asserted Claims are directed to the properties of the waist regions and side panels of the pant, i.e., they are "elastomeric" (e.g. claim 12) or "non-elastic"/"non-stretchable" (e.g. claims 18, 24). These limitations are nothing more than obvious design choices. Indeed, there are a limited number of ways to construct the side panels: (1) with elastic (as in the prior art Pull-Ups); or (2) without elastic (as taught by Van Gompel and others). (SOF ¶¶126-131; Blevins Decl. ¶¶168-171). Under *KSR*, it would have been "obvious to try" both options. *KSR Int'l Co.*, 550 U.S. at 421.

It is also well settled that, where the ***only difference*** between the prior art and the claims is the recitation of relative ***dimensions***, and a device having the claimed dimensions would not perform differently than the prior art, the claims are obvious. *See In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990) ("The law is replete with cases in which the difference between the claimed invention and the prior art is some range or other variable within the claims. . . . These cases have consistently held that in such a situation, the applicant must show that the particular

range is *critical*, generally by showing that the claimed range achieves unexpected results relative to the prior art range.") (emphasis in original).

Here, Claims 4, 8 and 23 recite "artificial dimensional limitations that add nothing to the claims, ... are of no constructive significance, and are essentially meaningless." *Gardner v. TEC Systems, Inc.*, 725 F.2d 1338, 1346 (Fed. Cir. 1984). For example, Claim 8 is directed to a training pant with "fastening components hav[ing] ***a length-to-width ratio of about 5 or greater.***" In the Prior Litigation, K-C asserted a similar claim directed to a refastenable training pant where "each of the first and second fastening components has . . . ***a length-to-width ratio of about 5 or greater.***" *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-916, 2012 U.S. Dist. LEXIS 129646, at *16 (E.D. Wis. Sept. 12, 2012). The Court held this claim invalid because "K-C d[id] not make any showing that the length-to-width ratio of the fastening element ... is somehow critical in that the claimed ratio achieves unexpected results relative to the prior art's generally stated range." *Id.* at *18-19. K-C had a full and fair opportunity to establish that the claimed ratio was somehow critical, but could not make this showing.

Claims 2, 6, 10, 12 and 15 are also obvious for the reasons set forth in the Blevins Declaration. (Blevins Decl. ¶¶65-66, 95-99, 113-116, 122-128, and 144-147).

## D. Claims 25 and 27-29 Merely Lump Together The Old Elements Discussed Above

Independent Claim 25, which spans nearly 100 lines, merely combines each of the elements of Claim 1 with additional known elements recited in the dependent claims discussed above, including: the placement of the hook and loop fastening components (Claim 3), the length-to-width ratio of the fastening components (Claim 8), containment flaps (Claim 11),

front/back waist elastics (Claim 12), printed graphics (Claim 13), a surge layer (Claim 14), and that the pant is "prefastened" (Claim 16). (SOF ¶142; Blevins Decl. ¶183).

As shown above, all of the elements of Claim 25 were old and disclosed by the prior art, including the 1996 Pull-Ups, LaFleur, Brandon and Kuen. Other elements, such as the dimensions of the pant and the placement or selection of particular components, are merely design choices that would have been obvious to a person of ordinary skill in the art. (*See, e.g.,* Blevins Decl. ¶¶80, 107, 125).

It would have been obvious to one of ordinary skill in the art to combine these known features to arrive at the pant of Claim 25. As an initial matter, the 1996 Pull-Ups, Kuen and Brandon are all iterations of K-C's prior art, non-refastenable, training pant. (SOF ¶141; Blevins Decl. ¶186). One of ordinary skill in the art would have understood that the various features of this very similar prior art could be easily combined. *KSR Int'l Co.*, 550 U.S. at 417 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious ....").

Moreover, the 1996 Pull-Ups, Kuen and Brandon, are all directed to solving, among other things, the ***same soilage problem*** identified by LaFleur. (SOF ¶144 Blevins Decl. ¶187). As discussed above, it was widely known that a surge layer, such as that disclosed by Kuen, could be used to further improve the performance of a training pant by minimizing leakage and reducing soilage during use and removal. (SOF ¶106; Blevins Decl. ¶143). In addition, as also discussed above, it would have been obvious to include the "registered wetness indicator" of Brandon in the 1996 Pull-Ups. Wetness indicators assist in toilet training by allowing a child to

595730.1

recognize when the article has been soiled and therefore further solve the problems identified by LaFleur. (SOF ¶¶99-100; Blevins Decl. ¶¶136-137).

Accordingly, and for the same reasons that this Court found to combine the 1989 Pull-Ups with LaFleur, it would have been obvious to combine the 1996 Pull-Ups, Brandon and Kuen with LaFleur. *KSR Int'l Co.*, 550 U.S. at 417.

Claims 27-29 depend from Claim 25 and add even more elements that were common in prior art training pants. Like Claims 18 and 24, respectively, Claims 27 and 29 require that the front side panels are "non-stretchable" (Claim 27) or "do not comprise elastic materials" (Claim 29). These limitations are nothing more than obvious design choices that, under *KSR*, would have been "obvious to try." *KSR Int'l Co.*, 550 U.S. at 421. Claim 28 further requires that "the front side panels are longitudinally spaced from the back side panels by a distance equal to from about 35 to about 60 percent of the overall length dimension of the training pant." This limitation is yet another insignificant design choice and, in any event, is found in the 1996 Pull-Ups. (SOF ¶134; Blevins Decl. ¶¶175-176).

In sum, Claims 25 and 27-29 are simply arrangements of known elements in a manner that yields predictable results, and therefore obvious as a matter of law. *KSR Int'l Co.*, 550 U.S. at 416.

### E. Secondary Considerations Cannot Overcome the Strong *Prima Facie* Case of Obviousness and K-C is Barred from Re-Litigating these Issues

Secondary considerations cannot save the Asserted Claims, just as they could not save the claims of the '067 Patent in the Prior Litigation.

First, "[w]here the undisputed evidence establishes a strong case for obviousness based upon the primary considerations, summary judgment is appropriate even in the face of secondary considerations that favor the patent holder." *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at

595730.1

27

915; *see also Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) ("[A] strong prima facie obviousness showing may stand even in the face of considerable evidence of secondary considerations"). As with the '067 Patent, the prior art clearly establishes a strong *prima facie* case that the Asserted Claims are obvious. Thus, even substantial evidence of secondary considerations could not overcome the inherent obviousness of the asserted claims. *See, e.g.*, *Rothman*, 556 F.3d at 1322.

Furthermore, secondary considerations are irrelevant absent a showing of a nexus to a feature of the invention that was not known in the prior art. *Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 915-16; *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent."); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985) (finding evidence of long-felt need, unexpected results, and alleged copying not probative absent a showing of a nexus to the merits of the claimed invention). As this Court previously found, refastenable seams, as well as all of the other claimed features, were ***already known in the prior art***. Accordingly, any alleged objective evidence that K-C could offer, is irrelevant as a matter of law.

K-C is collaterally estopped from arguing non-obviousness on the basis of secondary considerations. In the prior litigation, K-C argued that its refastenable Pull-Ups training pants were commercially successful due to their refastenable seams. *Kimberly-Clark Worldwide*, 900 F. Supp. 2d at 915-16. K-C also identified other alleged secondary considerations (e.g., industry acquiescence, long felt need, and copying), all of which were tied to refastenable seams. *Id.* at 917-18. This Court rejected K-C's argument that this evidence was sufficient to overcome the strong case for obviousness, *see id.* at 915–19, and on appeal, the Federal Circuit rejected K-C's

argument that this Court did not properly evaluate these secondary considerations. *See Kimberly-Clark Worldwide, Inc.*, 579 Fed. App'x 996. K-C took advantage of a full and fair opportunity to come forward with objective evidence and should not be permitted to invent a new story now (e.g., that its Pull-Ups were commercially successful for reasons other than refastenable seams).

## V. K-C IS BARRED FROM RELITIGATING THE SAME ISSUES OF OBVIOUSNESS

Prior litigation between K-C and First Quality decided that the combination of an old training pant and a known refastenable seam was obvious and therefore not patentable. K-C had a full and fair opportunity to be heard on this issue, litigated the issue aggressively in this Court and in the Federal Circuit, and ultimately lost. Specifically, K-C argued that it would not have been obvious to replace the bonded seams in a prior art training pant (*i.e.*, the 1989 Pull-Ups) with full-length refastenable seams (*i.e.*, LaFleur). This Court rejected K-C's argument and invalidated the '067 Patent as obvious. *Kimberly-Clark Worldwide*, 900 F. Supp. 2d at 914. The Federal Circuit affirmed. Thus, K-C is collaterally estopped from arguing that this combination is non-obvious, which is fatal to K-C's assertion of the '379 Patent in this lawsuit. *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

K-C cannot avoid collateral estoppel by pointing to minor differences between the asserted claims of the '379 Patent and the invalidated claims of the '067 Patent. More specifically, K-C cannot show that the asserted claims of the '379 Patent are ***patentably distinct*** from the invalidated claims of the '067 Patent. "[M]erely because the invention ... is presented in varying language or varying combinations of elements does not necessarily mean that the issues bearing on the nonobviousness of that concept or contribution vary from one claim to the next." *Bourns, Inc. v. United States*, 537 F.2d 486, 492 (Ct. Cl. 1976). As shown above, each

595730.1

29

and every one of "the differences between the adjudicated and unadjudicated claims relate only to things known in the art and, hence, the 'differences between the prior art and the claims at issue' are the same." *Id.* at 493 (internal citations omitted). Accordingly, the asserted claims of the '067 and '379 Patents are patentably indistinct for purposes of collateral estoppel, and "the obviousness determination in the prior proceeding should be equally applicable to the non-litigated claims" of the '379 Patent asserted here. *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1375 (Ct. Cl. 1975); *Collegenet, Inc. v. Applyyourself, Inc.*, Nos. CV-02-484-HU, CV-02-1359-HU, 2008 U.S. Dist. LEXIS 90156, at *96-97 (D. Or. Oct. 28, 2008) (after jury verdict invalidating some asserted claims, granting defendant's motion for summary judgment that all remaining asserted are invalid as obvious under collateral estoppel).

## VI.    CONCLUSION

For these reasons, First Quality respectfully requests that the Court enter summary judgment that the Asserted Claims of the '379 Patent are invalid.

Date:   January 23, 2015                    _s/T. Wickham Schmidt_____

Kenneth P. George
Ira E. Silfin
Brian A. Comack
Mark Berkowitz
Jessica Capasso
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Phone:    (212) 336-8000
E-mail:    kgeorge@arelaw.com
             isilfin@arelaw.com
             bcomack@arelaw.com
             mberkowitz@arelaw.com
             jcapasso@arelaw.com

595730.1

30

Michael A. Brille
Christopher G. Renner
J. Wells Harrell
Meryl C. Governski
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW, 8th Fl.
Washington, DC  20015
Phone:    (202) 237-2727
E-mail:    mbrille@bsfllp.com
             crenner@bssfllp.com
             wharrell@bsfllp.com
             mgovernski@bsfllp.com

David R. Cross
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI  53202
Phone:    (414) 277-5669
E-mail:    david.cross@quarles.com

T. Wickham Schmidt
LAW FIRM OF CONWAY, OLEJNICZAK &
JERRY, S.C.
231 South Adams Street
Green Bay, WI  54301
Phone:    (920) 437-0476
E-mail:    tws@lcojlaw.com

**ATTORNEYS FOR DEFENDANTS FIRST
QUALITY BABY PRODUCTS, LLC, FIRST
QUALITY RETAIL SERVICES, LLC, AND
FIRST QUALITY CONSUMER PRODUCTS,
LLC**