UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE INC. et al.,

        Plaintiffs,

    v.                               Case No. 14-CV-1466

FIRST QUALITY BABY PRODUCTS LLC et al.,

        Defendants.

---

FIRST QUALITY BABY PRODUCTS LLC et al.,

        Counterclaim-Plaintiffs,

    v.

KIMBERLY-CLARK WORLDWIDE INC. et al.,

        Counterclaim-Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC, (collectively "K-C") sued Defendants First Quality Baby Products LLC, First Quality Retail Services LLC and First Quality Consumer Products LLC (collectively, "FQ") for infringement of K-C's Patent No. 8,747,379 (the '379 patent). FQ has moved for summary judgment on the grounds that the asserted claims of the '379 patent are invalid under principles of collateral estoppel based on this court's previous decision invalidating the parent of the '379 patent and as obvious under 35 U.S.C. § 103. For the reasons that follow, FQ's motion will be granted.

## BACKGROUND

K-C owns a series of patents relating to disposable training pants for children, products which K-C markets under the brand name Pull-Ups®. At issue in this case is the '379 patent, entitled "Absorbent Articles with Refastenable Side Seams," which is a continuation of U.S. Patent No. 6,847,067 (the '067 patent). These patents share the same inventors, specification and drawings, and both claim priority to a provisional application filed on December 18, 1998. The patents are directed to training pants that have refastenable side seams.

According to the specification of the '379 and '067 patents, training pants are desirable and valuable products because they have the look of adult underwear, which appeals to children at the toilet-training age. When the child's training pants do need to be changed, however, conventional (non-refastenable) training pants have the disadvantage of having to be taken off over the child's legs, which runs the risk of spreading soilage potentially contained in the pant. The specification states that it therefore "would be desirable to have a [training pant] that provides the garment-like or underwear-like look of a traditional training pant yet affords the option of being applied either like a diaper or like a pant." ('379 Patent col. 1 lns. 58–61, ECF No. 1-1; '067 Patent col. 1 lns. 56–59, ECF No. 94-28.)

Hence the refastenable side seams. The specification of the '379 patent (like that in the '067 patent) states: "In response to the above-referenced unfulfilled need in the art, a new pant-like disposable absorbent article having refastenable side seams has been discovered." ('379 Patent col. 1 lns. 65–67.) When using this new product, "If the training pant becomes soiled during use, the fastening components can be disengaged from the mating fastening components to easily remove the training pant from the waist of the wearer with reduced risk of undesirably soiling the clothes or legs

2

of the wearer." (*Id.* col. 2 lns. 41–45.)  Thus, "[t]he product can . . . be pulled on like a conventional training pant, and subsequently checked or removed with the ease of a diaper-like product." (*Id.* col. 5 lns. 33–35.)

In a previous lawsuit between the parties, this court held that claims 8–10 of the '067 patent, which teach the refastenable side seams practiced in K-C's "Easy Open" Pull-Ups®, are invalid as obvious.  *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 900 F. Supp. 2d 903 (E.D. Wis. 2012).  That determination was based on an analysis of K-C's earlier, non-refastenable Pull-Ups®, as described in Patent No. 4,940,464 (Van Gompel), in view of a 1986 patent (No. 4,610,680 to LaFleur) that disclosed a disposable training pant with "overlapping flaps which can be secured to each other by hook and pile [i.e. Velcro®] fastening straps."  *Id.* at 909. The court noted that the problem addressed by LaFleur's patent was that "once a garment has become soiled, removal of the garment can substantially increase the spread of soilage, especially since the garment must be pulled over the child's legs."  *Id.* at 907 (quoting the LaFleur specification).  In short, the court applied the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), to find that it would have been obvious to a person of ordinary skill in the art to combine K-C's non-refastenable Pull-Ups® with LaFleur to arrive at the claimed invention. The court reached this conclusion notwithstanding evidence brought forth by K-C that the products practicing the '067 patent have been commercially successful, that there was industry skepticism about the marketability of a refastenable training pant, and other evidence of such "secondary considerations" that are considered when assessing whether an invention is obvious.  Thereafter, in an *inter partes* re-examination proceeding in 2013, the Patent and Trademark Office also rejected the claims in the '067 patent as obvious.  In a *per curiam* decision without opinion, the Federal

3

Circuit affirmed this court's judgment of invalidity on October 10, 2014. (ECF No. 43-1.)

In this case, K-C alleges that FQ's products infringe claims 1–8, 10–16, 18, 23–25 and 27–29 of the '379 patent. Claim 1, an independent claim spanning some 74 lines, claims a training pant comprised of an "absorbent chassis" made up of a "composite structure" bonded to front and back "side panels" connected by a "fastening system." Claims 2–8, 10–16, 18, 23 and 24 are dependent claims which depend from claim 1. These and the rest of the claims are described in more detail below, but generally speaking, these dependent claims recite additional detail about the fastening system (claims 3–8) or add other features to the pant, such as "containment flaps," "wetness indicators" and a "surge layer" (claims 10, 13 and 14, respectively). Claim 25, comprising nearly 100 lines, is an independent claim that incorporates some of these additional limitations into the claim itself. Claims 27–29 depend from claim 25 and add detail about the front side panels, including that they are "non-stretchable" (claim 27) or that they "do not comprise elastic materials" (claim 29).

FQ contends it is entitled to summary judgment on the ground, among others, that the suit on the '379 patent is barred by collateral estoppel under the Federal Circuit's judgment in the '067 case, and that the '379 patent is invalid as obvious in any event for essentially the same reasons that the '067 patent was invalid as obvious. After extensive briefing and oral argument in court, the issue is ready for decision.

## ANALYSIS

### A. Collateral Estoppel

Generally, "[c]ollateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Also known as issue

4

preclusion, collateral estoppel has four elements: the issue sought to be precluded must be the "same" as an issue in a prior case; the issue must have been "actually litigated" in the prior case; the determination of the issue must have been "essential to the final judgment" in the prior case; and the party against whom estoppel is invoked must have been "fully represented" in the prior case. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). The question of whether a past decision invalidating certain claims of a patent precludes the assertion of related claims (i.e., whether the invalidity issues in the two cases are the "same" under the first element) requires looking to Federal Circuit precedent. *See Ohio Willow*, 735 F.3d at 1342 ("Our review of a collateral estoppel determination is generally guided by regional circuit precedent, but we apply our own precedent to those aspects of such a determination that involve substantive issues of patent law.").

In *Ohio Willow*, the Federal Circuit held that collateral estoppel barred the patentee's assertion of several claims in a patent when several claims in a related patent were found invalid as obvious in a prior case. The patents were directed to cushioning devices that go over the residual stumps of amputated limbs to make the use of prosthetics more comfortable. The previously invalidated claims recited a "cushion liner for enclosing an amputation stump, said liner comprising a fabric covering having an open end for introduction of said stump and a closed end opposite said open end." *Id.* at 1342–43. The asserted claims similarly recited a "tube sock-shaped covering," an "amputation stump being a residual limb," and "fabric in the shape of a tube sock." *Id.* The Federal Circuit found that the patents thus "use[d] slightly different language to describe substantially the same invention." *Id.* at 1343. The court then noted that the patentee had failed to explain how the differences between the scope of the invalidated and asserted claims materially altered the invalidity determination from the prior case. It was not disputed that the asserted claims were

5

broader—the invalidated claims required a "polymeric" gel whereas the asserted claims more specifically required a "block copolymer" gel. Nonetheless, the court rejected the patentee's argument that this meant collateral estoppel did not apply:

> [The patentee] OWW argues that this difference in claim scope precludes summary judgment. But OWW has not adequately supported this contention because it has not provided any explanation regarding how the "block copolymer" limitation is *patentably significant* in view of the obviousness determination regarding the claims of the [adjudicated] patent. Since OWW failed to explain *how* the "block copolymer" limitation changes the invalidity analysis, OWW has not met its burden of opposing summary judgment based on this distinction. Thus, summary judgment that [the asserted claims] are invalid on the basis of collateral estoppel was appropriate.

*Id.* (first italics added).

Relying on *Ohio Willow*, FQ argues here that the invalidated claims of the '067 patent and asserted claims of the '379 patent are essentially identical and, to the extent the latter recite additional substantive limitations, they simply add features well known in the prior art for training pants and thus do not materially alter the invalidity question. In other words, FQ's position is that adding known design features like those described in the new claim limitations does not change the obviousness analysis in the prior case.

In response to FQ's motion for summary judgment, K-C devotes most of its effort to rearguing the issue that has already been decided—namely, whether it would have been obvious to one reasonably skilled in the art on November 22, 1999, the filing date of the application from which both the '067 and '379 patents trace their origin, to combine refastenable seams to K-C's disposable training pant. K-C again recounts, this time in more detail, the obstacles that it had to overcome to bring its disposable training pant with refastenable sideseams to market: "Given the need to maintain closure and prevent unintended opening during use, it was not at all obvious how to design a commercially feasible refastenable training pant before and at the time of K-C's development work."

(K-C Br. in Opp. to FQ's Mot. for S.J. at 32, ECF No. 135-1) (internal quotation omitted). No doubt this is true. K-C had to overcome many obstacles to reduce to practice and make commercially feasible the new consumer product that became its Pull-Ups® with Easy Open Sides. But the question to be decided when the validity of a patent is challenged on obviousness grounds is whether the invention was obvious at the time it was made, not whether it was obvious that it could be made into a commercially successful consumer product.

An invention is in essence a concept: "The primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 60 (1998). The invention claimed in both the '067 and its continuation, the '379 patent, is the addition of refastenable sideseams to a disposable training pant. As noted above, this court has already determined that the idea of combining refastenable sideseams to a disposable training pant would have been obvious to one skilled in the art in light of LaFleur and K-C's original Pull-Ups® training pants. The court's decision was affirmed by the Federal Circuit, which means that this court could not revisit its conclusion in the prior case even if it was inclined to do so. The dependent claims of the '379 patent asserted by K-C contain slight variations of the essential features already present in the '067 patent or add additional features already well-known in the prior art and previously incorporated in K-C's own training pants products. None of them materially alter the obviousness question.

It is clear that the descriptions of the refastenable side seams at the heart of the invalidated and asserted claims are essentially the same. Invalidated claim 8 of the '067 patent recites:

> a fastening system for releasably attaching a front waist region of the absorbent chassis to a back waist region of the absorbent chassis to define a refasteable pant having a waste opening and a pair of leg openings, the refastenable pant comprising:
>
> . . . .

7

> a pair of refastenable seams extending from the waist opening to each
> leg opening, each refastenable seam disposed between an elastomeric
> front side panel and an elastomeric back side panel[] . . . .

('067 patent col. 23.) Independent claims 1 and 25 of the '379 patent, from one or the other of which each of the other asserted claims depends, describe essentially the same feature but in more words. Claim 1 recites:

> a fastening system for releasably securing the absorbent chassis in a pant-like
> configuration having a waist opening and a pair of leg openings, the fastening system
> comprising first and second fastening components adapted to releasably engage first
> and second fastening components being disposed on the respective first and second
> back side panels adjacent to distal edges, the fastening components and the mating
> fastening components each comprising mechanical fasteners, and engagement of the
> fastening components and mating fastening components defines refastenable seams
> that cover about 80 to 100 percent of a distance between the waist opening and the
> leg openings.

('379 patent col. 21 lns. 27–43, ECF No. 1-1.) In oral argument, K-C highlighted the simple fact that the fastening system is described in more detail in asserted claim 1 than invalidated claim 8.[1] K-C argued this is the result of the legitimate practice of narrowing the scope of the claims to "carve out a smaller piece of property" than what was invalidated in the '067 patent. But more words do not necessarily mean narrower claims. K-C did not indicate how the claims are narrower, and in fact, some of the language that was added would appear to *broaden* the scope of the claims. While invalidated claim 8 simply requires the side seams to extend "from the waist opening to each leg opening," the seams of claims 1 and 25 must "cover about 80 *to* 100 percent of a distance between

---

[1]The relevant part of claim 25 appears to be substantially identical to claim 1 except that the "mechanical fasteners" are specified to be "loop" and "hook" type (i.e. Velcro®), with the hook-type Velcro® strip "having a length-to-width ratio of about 5 or greater." (*See* '379 patent col. 24 lns. 10–29.) K-C makes no argument that this language is patentably significant, and any such argument would be unpersuasive given that the '067 patent and the LaFleur patent itself each teach the use of Velcro® for the refastenable seams.

8

the waist opening and the leg openings."[2] Thus, the asserted claims have added detail but broadened scope. Accordingly, as in *Ohio Willow*, the descriptions of the side seams simply use "slightly different language to describe substantially the same invention."

Aside from this language, it is true that there are substantive differences between the claims, such as the "containment flaps" and the "surge layer." K-C argues that the mere fact that FQ has invoked new prior art references at all (to show the new limitations were known in the art) proves that the invalidity issues are not the same and collateral estoppel is inapplicable. K-C argues that the differences in claim scope are "substantively important" and render the claims "patentably distinct." (K-C's Opp. 48, ECF No. 135-1.) But the question under *Ohio Willow* is whether the analysis is *materially* different. Identity of claims is not required for collateral estoppel to apply. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015). The routine incorporation of known technology into a dependent claim does not change the invalidity analysis. *Id.* at 1119-20. That is precisely what K-C has done here, and FQ has cited the prior art to show that the added features were already well-known in the relevant prior art.

K-C correctly notes that the obviousness analysis cannot be boiled down to comparing the claims and checking the prior art to see if the new limitations exist. Such an approach would improperly treat the invalidated claims as themselves prior art. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1085); *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976). This approach is ultimately not consistent with § 103 because the new combination of features as described in the unadjudicated claims would never be considered "as a whole" for

---

[2]  The change was presumably motivated by FQ's argument in the prior lawsuit that claim 8 of the '067 patent required the refastenable seam to extend the entire distance between the waist and leg opening. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, Case No. 09-CV-00916-WCG, ECF No. 319, FQ's Claim Construction Br. at 13–21.

9

obviousness. *Interconnect*, 774 F.2d at 1137 ("When a patent has been reissued with claims that are not substantially identical to the original claims, the invention as a whole, as now claimed, must be evaluated in terms of 35 U.S.C. § 103. The original claims, whether valid or invalid, are not prior art against the reissued claims."). But the fact remains that before filing its sur-reply, K-C had never explained how its new combination of features "as a whole" could possibly be non-obvious, given that the old combination "as a whole" was obvious. That is the key question for purposes of collateral estoppel.

Indeed, K-C's primary arguments on the merits of the obviousness question suggest that it is not the new features that K-C thinks make its claims valid. Like it did in the previous case, K-C argues that in historical context, adding refastenable side seams to a training pant was not obvious. And as explained in the next section, K-C has bulked up its arguments on motivation to combine (or lack thereof) and the secondary considerations, such as commercial success and industry skepticism. To be sure, these are proper arguments on the merits, assuming collateral estoppel did not apply. But for present purposes, these arguments do not distinguish the patents; they seem to confirm that the added features are *not* patentably significant.

In its sur-reply, K-C finally offers an argument as to how one of the new features materially changed the invalidity question. K-C argues that the addition of the containment flaps (which are only required in 3 of the 23 asserted claims) "dramatically changes the obvious analysis." (Sur-Reply at 8, ECF No. 154-1.) The argument is based on the rebuttal expert report of Cynthia Panning submitted with the sur-reply. Ms. Panning explains that the containment flaps shrink the leg opening in the pant, resulting in the child's toes getting stuck in the flaps and the caregiver having to stretch the pant in order to put it on the child. K-C played a video at oral argument (over FQ's objection, K-C offered the video purely for demonstrative purposes) showing a child struggling to put the pants

10

on because his toes were apparently caught in the containment flaps. This puts more pressure on the pant's side seams, Panning says, and thus would deter one skilled in the art from putting containment flaps in a refastenable training pant. (ECF No. 155-1, ¶¶ 25–27.)

K-C's new argument and evidence is untimely, but even if it were not, it is ultimately unpersuasive. There appears to be no reason Ms. Panning could not have provided this opinion in either of her two previous submissions on the obviousness of the asserted claims. K-C states that her report is in rebuttal to FQ's expert's "new" invalidity report (which neither party has filed with the court), but FQ's motion for summary judgment is based solely on FQ's expert's original report, which K-C has had since January 2015. This renders her new opinion untimely, and the fact that she did not offer it earlier also undermines K-C's argument that combining containment flaps with a refastenable seam was a serious issue that would deter a skilled artisan. Moreover, there is no teaching in the '379 patent regarding this problem or the way that the claims of the '379 patent solved it.

K-C does not argue, nor could it, that the other three elements of collateral estoppel (that the obviousness issue was not "actually litigated" in the prior case, that the determination of the issue was not "essential to the final judgment" or that K-C was not "fully represented" in the prior case) are not satisfied. I thus conclude that because the obviousness issue in this case is virtually the same as the obviousness issue in the last case, collateral estoppel applies. FQ's motion for summary judgment will therefore be granted.

**B. Obviousness**

FQ also moves for summary judgment on the ground that the asserted claims are invalid as obvious in the first instance. A claim is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious

11

before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103(a). Each claim is presumed valid even if dependent on an invalid claim. 35 U.S.C. § 282.

As always, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable factual inferences must be drawn in favor of K-C. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Obviousness is a question of law based on the following factual determinations: "(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). Because claims are presumed valid, proof of obviousness must be clear and convincing, and the burden is especially difficult where the patent challenger "attempts to rely on prior art that was before the patent examiner during prosecution." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004). In short, "[t]o support a finding of obviousness on summary judgment, the court must conclude that one of ordinary skill in the pertinent art would have found it obvious to bridge the differences between the subject matter of the claims and the prior art when the facts are viewed in a light most favorable to the patentee." *Ohio Willow*, 735 F.3d at 1343.

Here, FQ argues the asserted claims are obvious based on the 1996 version of K-C's Pull-Ups®, which were not refastenable, in view of the LaFleur refastenable side seams this court examined in the prior case. To the extent the asserted claims in this case include additional substantive limitations, FQ argues that the limitations were well known in the prior art and thus merely obvious "design features." (Blevins Dec. ¶¶ 5–6, ECF No. 94.) FQ has presented the

relevant prior art through an affidavit of its expert John Blevins. Before turning to Blevin's ultimate opinion on obviousness, which K-C vigorously disputes, the court will address any potential factual disputes regarding the scope and content of the prior art Blevins cites. As explained below, however, there are no genuine disputes of fact and Blevins' ultimate conclusion is inescapable.

### 1. Prior art and asserted claims

Blevins' report summarizes the pertinent prior art from FQ's perspective. Blevins inspected the 1996 Pull-Ups® and observes they had "elastomeric" side panels as that term is defined in the '379 patent. (*Id.* ¶ 41.) He also found the pant had a pair of "containment flaps" and a "surge layer." (*Id.* ¶¶ 45–47.) Blevins then describes claims 14–16 of the LaFleur patent, which this court noted in the prior case "make[] clear that the claimed invention features a pair of overlapping flaps that, with fastening elements, can be secured together to form a seam extending from the waist to the leg opening on each respective side of the article." 900 F. Supp. 2d at 910. The only way in which K-C disputes the scope of the prior art thus far is to note that while LaFleur's pant is formed in one integral piece, the side seams in all of the asserted claims are formed by joining fastening components on *side panels* that are themselves separate from and bonded to the composite structure. (K-C's Opp. at 24.) This dispute about LaFleur is not material, however, because FQ does not rely on LaFleur for the "side panels" in the asserted claims. Rather, as Blevins explains and K-C does not dispute, K-C's 1996 Pull-Ups® have side panels. (Blevins Dec. ¶ 55 & Ex. 15, Claim Chart at 5.)

Blevins proceeds to describe the prior art FQ contends includes the remaining features in the asserted claims. He notes that some of these features are described in the '379 patent itself as well known in the field of training pants. For example, the specification states that the elastomeric waistband required by claims 12, 25, and 27–29 and the elastomeric side panels required by every

13

asserted claim were "known to those skilled in the art." ('379 patent col. 10 lns. 9–13 & col. 14 ln. 50 to col. 15 ln. 3.) Blevins also explains that all of the requirements of asserted claims 2–8, 10–16, 18, 23–25, 27–29 can be found in combinations the 1996 Pull-Ups® and LaFleur, as well as prior art patents to Surprise, Long, Brandon, Kuen and Van Gompel. In its opposition brief, K-C argues that none of these patents have the combination of features claimed in the '379 patent. The argument is not particularly helpful, though, because FQ's position is that any given asserted claim is taught by the combination of the 1996 Pull-Ups® and LaFleur for the refastenable side seams, which are in all the claims, as well as one or more of the other patents mentioned, depending on which additional features are at issue. In other words, K-C's argument does little to advance the ball because FQ does not contend that any of these prior art patents anticipate any of the claims in the '379 patent. To make matters more confusing, K-C repeatedly raises what FQ aptly describes as "phantom" disputes, such as that described above with LaFleur and the side panels. For example, K-C notes that Surprise does not teach separate side panels required by claims 3 and 4, but as FQ points out, the 1996 Pull-Ups® do. (*See* K-C's Opp. at 25; FQ's Reply at 18–19, ECF No. 145.) To the extent FQ relies on Surprise, it is simply to show that there was nothing new about the requirements in claims 3 and 4, which relate to the orientation and size of the fasteners.

In its sur-reply, K-C summarizes the main factual disputes as to the scope of the prior art that supposedly preclude summary judgment. (Sur-Reply 19, ECF No. 154-1.) But FQ's responses demonstrate conclusively that K-C has not raised genuine disputes of fact. First, K-C repeats that Surprise does not have the combination of fastening components and side seams required by claims 3 and 4. Claim 3 requires the training pant of claim 1 with "first and second front side panels and the first and second back side panels [having] an inner surface and an opposite outer surface, and the first and second fastening components [comprising] loop type fasteners *disposed on the outer*

14

*surface* of the first and second back side panels and the first and second mating fastening components [comprising] hook or mushroom type fasteners *disposed on the inner surface* of the first and second front side panels." Claim 4 requires the pant of claim 3 "wherein the first and second fastening components are sized *larger than* the first and second mating fastening components." Surprise clearly teaches front fasteners that are smaller and face inward and back fasteners that are larger and face outward:



(ECF No. 94-16 Fig. 4B.) And that is what FQ uses it for. (*See* Blevins Dec. ¶¶ 74, 82.) As noted above, the fact that Surprise does not have side panels does not matter since the 1996 Pull-Ups® do.

Second, K-C asserts that "FQ abandoned its position on Long" and "thus presents *no evidence* of a training pant in the prior art having back side panels with integral loop fasteners" as required by claims 5 and 7. This is not true. Blevins states that "it was well known at the time the '379 Patent was filed that loops could be integrally formed on non-woven surfaces of diapers and training pants, or could be attached as a separate loop strip." (*Id.* ¶ 94.) K-C does not dispute this assertion. (K-C's Responses to FQ's Findings of Fact ¶ 64, ECF No. 136-1.) Blevins cites as support for his assertion the Long patent and he notes that it teaches that the fastening components "desirably . . . may be integrally formed" on the layer on which they are disposed. (Blevins Dec.

15

¶ 91) (quoting Long). In other words, the side panel may be made of non-woven fabric, which can itself serve as the loop fastener. (*Id.*) Blevins writes: "As noted by Long, the provision of integral loop fasteners provides added flexibility to the user, including the ability to 'fasten anywhere' on the rear side panels." (*Id.* ¶ 93.) It was only after K-C made the argument that Long does not have the same side panels as are in the '379 patent that FQ noted that it was relying on Long for the integral fastener and on the 1996 Pull-Ups®, not Long, for the side panels. But it is clear that FQ has not abandoned Long as K-C argues.

Third, K-C argues Van Gompel and Long do not teach a training pant with front side panels that are "*non*-stretchable" or "do *not* comprise elastic materials" as required by claims 18, 24, 27 and 29. Specifically, K-C argues "FQ's own expert conceded during his deposition that the side panels in Van Gompel include elastomeric materials that are stretchable." (Sur-Reply at 19.) But Blevins' contention was actually that Van Gompel, which has a side panel made of stretchable material and an intermediate member made of non-stretchable material, teaches that "you can use elastomeric material or you can use non-stretchable material." (Dep. Tr. 372 lns. 19–21, ECF No. 155-2; Van Gompel col. 3 lns. 19–22, ECF No. 94-13.) Moreover, K-C's expert Butterworth said that there were only three materials for side panels: stretchable, nonstretchable and elastomeric, which means it will stretch and recover. (Dep. Tr. 207 ln. 14 to 208 ln. 2, ECF No. 149-2.) Butterworth later stated: "We're talking about what a person skilled in the art would do. And they would know what to select. They're—people know what non-stretchable, non-wovens, wovens, knits, porous films are. They would choose them." (*Id.* at 255 lns. 3–8.) Thus, given the limited choices of type of material and K-C's own expert's testimony that the skilled artisan would simply choose one, K-C's purported dispute over the scope of Van Gompel is not material either.

16

Fourth, K-C argues Schmitz and Widlund do not teach the "prefastened pant" required by claims 16 and 25. (ECF No. 154-1 at 20.) Blevins cites these patents because they do teach a prefastened training pant. (Dec. ¶¶ 155, 161.) K-C simply disputes that these patents have side panels (Opp. at 28), which again is not material given the 1996 Pull-Ups®.

In sum, I agree with FQ that K-C has raised nothing more than a series of "phantom" disputes as to the scope and content of the prior art relied upon by Blevins. In reality, this case is not about reasonable differences of opinion as to the scope of the prior art references. Rather, what K-C really disputes is Blevins' combining all of these various prior art references to find the asserted claims obvious. The court turns to that conclusion now.

### 2. Motivation to combine, reasonable expectation of success and secondary considerations

The thrust of FQ's argument here, as in the '067 case, is that it would have been obvious to combine the prior art references Blevins noted to arrive at the claimed invention. A person of ordinary skill in the art is attributed with knowledge of relevant prior art. *Rothman v. Target Corp.*, 556 F.3d 1310, 1318 (Fed. Cir. 2009). Where the technology at issue is "easily understandable," a determination of obviousness may be appropriate on summary judgment, even when expert testimony is submitted by the patentee regarding lack of motivation to combine prior art references or regarding lack of reasonable expectation of success in doing so. *See Kimberly-Clark Worldwide, Inc.*, 900 F. Supp. 2d at 908 (discussing *Wyers*, 616 F.3d 1231 and *KSR Int'l Co.*, 550 U.S. 398).

As the Supreme Court explained in *KSR Int'l Co.*, a patent claiming the "combination of elements of prior art" is likely invalid as obvious if a person of ordinary skill in the art could "implement a predictable variation" of those elements. 550 U.S. at 417. Such a combination is proved obvious if "there existed at the time of invention a known problem for which there was an

17

obvious solution encompassed by the patent's claims." *Id.* at 419–20. "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination [is] obvious to try might show that it was obvious under § 103." *Id.* at 421.

Before turning to the evidence of non-obviousness, K-C argues there is a genuine dispute as to the "skillset" of a person of ordinary skill in the art. Specifically, K-C argues that "[t]he evidence is overwhelming that the level of skill required to design the refastenable training pant of the '379 patent claims was substantial, and far beyond the level of ordinary skill in 1998. At a minimum, there are genuine issues in dispute concerning this primary obviousness factor." (K-C's Opp. 22.) But the parties' experts agree that a person of ordinary skill in the art in this case is someone with two to four years of work experience in product design and testing of disposable absorbent articles such as diapers and training pants. (*Id.*) Thus, K-C has not raised a factual dispute about the level or ordinary skill, but merely disputes the ultimate contention that the combination would have been obvious to a person with such skill.

The fact that all of the subject matter claimed in the asserted claims was known in the prior art means the validity question turns on whether it would have been obvious to combine these features in one training pant. In the previous case, the court noted that LaFleur described the problem of taking non-refastenable pants off a child who has soiled his or her pants. The court explained that LaFleur solved that problem by adding refastenable side seams to the child's pant. Notwithstanding K-C's expert opinion, the fact that a prior patent disclosed the problem and solution presented in the '067 patent was powerful, ultimately dispositive evidence of a motivation to

18

combine:

> Although K-C's expert would not have had motivation to combine LaFleur with K-C's non-refastenable Pull-Ups® training pant, his conclusions are not sufficient to create a genuine issue of material fact, especially in light of the a clear example in the prior art of such a person doing just that.

> Furthermore, the problem posed by non-refastenable Pull-Ups® training pants was well known by those in the field: namely that bonded seams prevented easy removal of the article except over the child's legs, increasing the risk of spreading soilage. This is exactly the problem that LaFleur sought to address. There are only a finite and limited number of predictable solutions to this problem, one of which was the refastenable seam offered by LaFleur. Logic and common sense would, indeed did, provide the motive to a person of ordinary skill in the art to add a refastenable seam to a disposable training pant.

900 F. Supp. 2d at 912.

In this case, K-C offers a new reason why one would not have added a refastenable seam to a training pant. K-C argues that one of ordinary skill in the art "would have expected training pants designed with refastenable seams that are easy to open and close for parents, to pop open during use and fail." (K-C's Opp. at 31.) Similarly, K-C explains that the pant had to strike the "right balance" between being easy enough for the parent to unfasten but strong enough to withstand the child's attempts to intentionally escape. K-C has submitted evidence such as the lab notebooks of some of the inventors named in the '379 patent in an effort to re-create the historical context in which K-C's team confronted and ultimately overcame these challenges.

In addition to these technical issues with the concept, K-C notes that there was also concern that a refastenable training pant would be rejected by parents and children as too diaper-like. Thus, there was significant skepticism within the company and the industry generally. K-C argues that all of this shows that one would not necessarily be motivated to combine the prior art references discussed above. K-C also submits evidence of the commercial success of its invention, the fact that it satisfied a long-felt need in the market, and industry praise, as secondary considerations that weigh

19

against finding its combination obvious. K-C says when it ultimately launched its new product in September 2002, it was a "game-changer." Working for a competitor at the time, one of K-C's experts recalls exactly what ironic words she said the first time she saw K-C's new design: "Oh crap."

The problem with these arguments, however, is they are not mentioned in the specification and, more importantly, they relate to difficulties in reducing the invention to practice, not to conceiving the invention in the first place. The "pop-open" problem, for example, is hardly mentioned in the '379 patent. It appears the only suggestion of this problem comes in the specification's summary of the design, which calls it "resistant to accidental disengagement." ('379 patent col. 2 ln. 57.) And there is no teaching in the patent as to how K-C overcame this problem with some sort of special seam that "found the 'sweet spot' among the numerous refastenable concepts." (K-C's Opp. at 7.) Rather, the specification essentially reveals the opposite:

> The fastening components can comprise *any refastenable fasteners suitable for absorbent articles*, although desirably comprise mechanical fastening elements rather than adhesive fastening elements for improved performance. Suitable mechanical fastening elements can be provided by interlocking geometric shaped materials, such as hooks, loops, bulbs, mushrooms, arrowheads, bails on stems, male and female mating components, buckles, snaps, or the like. In particular embodiments, the fastening components and mating fastening components comprise hook-and-loop fastening elements. *One skilled in the art will recognize that the shape, density and polymer composition of the hooks and loops may be selected to obtain the desired level of securement between the fastening components and the mating fastening components.* A more aggressive hook material may comprise a material with a greater average hook height, a greater percentage of directionally-aligned hoods, or a more aggressive hook shape.

('379 patent col. 4 ln. 60 to col. 5 ln. 10) (emphasis added). Thus, even if the K-C team did encounter and solve problems with pop opens leading up to the launch of the Easy Open Pull-Ups® in late 2002, neither that process nor the fruits of K-C's labor are disclosed in the patent, which it must be remembered claims priority to an application filed in 1998.

20

There are still the arguments that these problems with refastenable pants in general would have deterred, not motivated, the skilled artisan from combining these features in a training pant, and that the secondary considerations, not least the undeniable commercial success of the Easy Open Pull-Ups®, indicate this invention was not obvious. But the difficulty with these arguments is essentially the same as that with essentially the same invention claimed in the '067 patent: they relate to difficulties overcome and success achieved in reducing the concept to practice and making it commercially successful as a consumer product, not obstacles to the concept itself. The idea of adding refastenable seams to training pants had already been conceived by LaFleur some thirteen years earlier. K-C's achievement was reducing LaFleur's idea to practice using the more advanced synthetic materials then available, designing and building the machines required to manufacture, assemble and package the training pants at a speed and cost needed for a successful consumer product, and then mounting an effective advertising campaign to create the market for such a product. This is no small achievement in itself, as the court acknowledged in its decision concerning the '067 patent:

> No doubt, K-C took a significant risk in developing its Pull-Ups® training pants with Easy Open Sides, given the capital investment required to develop a process for manufacturing the product on a commercial scale and the uncertainty of how they would be received in the market. But patent law rewards technical innovation that is not obvious, not commercial risk-taking that is not in the service of such innovation.

900 F. Supp. 2d at 916. Simply put, K-C took an idea that was already present in the prior art related to training pants and other disposable incontinence products, combined it with its then existing disposable training pant product, and used its considerable financial, research and development resources to transform that idea into a successful consumer product. While K-C's efforts are commendable and certainly deserving of the financial rewards it has been able to recoup

21

from its investment, this does not change the fact that adding refastenable seams to the then existing disposable training pants product in 1998 was an obvious change to address the problem of removing soiled training pants from a young child.

For all of these reasons, even viewing the facts in a light most favorable to K-C, it would have been obvious to one of ordinary skill in the art to combine the prior art encompassed by the claims in the '379 patent. The asserted claims are invalid as a matter of law and FQ is entitled to summary judgment.


**ORDER**

**IT IS THEREFORE ORDERED** that:

FQ's motion for summary judgment of invalidity (ECF No. 90) is **GRANTED**.

The parties' motions to seal (ECF Nos. 134, 144, 161) are **GRANTED**.

K-C's motion for leave to file a sur-reply (ECF No. 154) is **GRANTED**.

The remaining summary judgment motions (ECF Nos. 157 & 162) are **DENIED AS MOOT**.

The Clerk is directed to put this matter on the court's calendar for a telephone scheduling conference to discuss FQ's counterclaims.

Dated at Green Bay, Wisconsin this  30th   day of September, 2015.

  s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

22